[No. 18175.  *En Banc.*  March 6, 1924.]

THE STATE OF WASHINGTON, *Appellant,* v. H. C. ERICKSON, *Respondent.*[1]

BANKS AND BANKING (4-1, 9)—OFFENSES—PREFERENCES TO CREDITOR. Rem. Comp. Stat., § 3262, making every transfer by an insolvent bank or in contemplation of insolvency with a view to the preference of one creditor over another a felony, includes any preference to a single creditor and does not require a transfer of all its property.

SAME (4-1, 9)—OFFENSES—PREFERENCE TO CREDITORS—"TRANSFER" —SUFFICIENCY. An indictment sufficiently charges a "transfer" of property of an insolvent bank or in contemplation of insolvency with a view to the preference of one creditor over another, in violation of Rem. Comp. Stat., § 3262, where it charges the giving to a creditor of the bank's certificate of deposit for $5,000, making an entry showing payment thereof, and the taking possession for the use of E. of the banks assets, gold, currency, silver, etc., and notes aggregating $5,000 for the purpose of giving E. a preference.

SAME (4-1, 9)—OFFENSES—"PREFERENCE AS CREDITOR"—INDICTMENT —SUFFICIENCY. Such an indictment is not insufficient in that it alleges the giving the payee "a preference as one of the creditors" of the bank, instead of "with a view to the preference of one creditor over another."

SAME (4-1, 9)—OFFENSES—PREFERENCE TO CREDITOR—INSOLVENCY OF BANK. There can be a transfer in contemplation of insolvency with a view to the preference of one creditor over another, in violation of Rem. Comp. Stat., § 3262, although the bank did not in fact become insolvent, which need not be alleged in the information.

FULLERTON, HOLCOMB, and MACKINTOSH, JJ., dissent.

Appeal from a judgment of the superior court for Grant county, Davidson, J., entered June 15, 1923, dismissing a prosecution for the crime of transferring property of an insolvent bank in preference of a creditor, upon sustaining a demurrer to the indictment. Reversed.

[1]Reported in 223 Pac. 1046.

*N. W. Washington,* for appellant.

*Daniel T. Cross* and *Turner, Nuzum & Nuzum,* for respondent.

TOLMAN, J.—This is an appeal by the state from an order sustaining a demurrer to and dismissing an indictment for the crime of transferring property of an insolvent bank with a view to the preference of one creditor over another.

The prosecution was commenced under § 3262, Rem. Comp. Stat. [P. C. § 305], which reads:

"Every transfer of its property or assets by any bank or trust company in this state, made in contemplation of insolvency, or after it shall have become insolvent within the meaning of this act, with a view to the preference of one creditor over another, or to prevent the equal distribution of its property and assets among its creditors, shall be void. Every director, officer or employee making any such transfer shall be guilty of a felony."

The indictment is in the following language:

"H. C. Erickson is accused by the grand jury of the state of Washington for the county of Grant, in the said state of Washington by this indictment of the crime of transferring property of an insolvent bank with a view to the preference of one creditor over another, committed as follows, to-wit: That on the 6th day of October, 1922, one John Erickson was the owner of a certificate of deposit issued to him by the Grant County Bank, a corporation, for the sum of $5,000.00; that on the said day, the said Grant County Bank, a corporation was in a serious and precarious financial condition; that the said H. C. Erickson was then the cashier of said Grant County Bank, a corporation, and knew of its precarious and unsafe condition, and in contemplation of the said Grant County Bank, a corporation, becoming insolvent, and for the purpose of giving the said John Erickson a preference as one of the creditors of said Grant County Bank, a corpor-

ation, the said H. C. Erickson did on the 6th day of October, 1922, in the county of Grant, state of Washington, make entry in the books and records of said bank, showing the payment of said certificate of deposit, and took as payment therefor into his possession for the use and benefit of the said John Erickson, from the funds and assets belonging to said bank $400.00 in gold; $930.00 in paper currency; $402.00 in silver dollars; 600 half dollars; 400 quarters of a dollar; $100.00 in ten cent pieces; 80c in nickels; 3 pennies; $192.00 in Canadian currency, together with checks and notes belonging to the said Grant County Bank, a corporation, all of which was of the aggregate value of $5,000.00, contrary to the statute in such cases made and provided, and against the peace and dignity of the state of Washington."

Respondent contends that the indictment fails to state facts sufficient to constitute a crime under the statute, in a number of particulars and for several reasons.

(1) That the statute means to make criminal only the transfer of *all* of the property and assets of the failing bank. When the statute is read with its evident purpose in mind, this argument falls. The evil to be prevented is the preference of one creditor over another, and be his claim ever so small, that which results in one creditor being paid in full, though such payment takes but a small part of the assets of the bank and causes another or other creditors to receive less than full payment, works such a preference, and it is *every* such transfer that the statute condemns.

(2) The word "transfer" means something more than payment by a bank to its depositors in the regular and ordinary course of business. Admitted. But the indictment does charge more than this. It charges the affirmative and positive act of the respondent as

cashier, with knowledge of the conditions, making himself an actor and performing, of his own volition, the acts by which the bank was stripped of its gold, currency, silver, small change, foreign money, pennies and notes and checks to the extent of $5,000, and taking the same into his possession for the purpose of paying in full the holder of a certain certificate of deposit. One can hardly contend seriously that this was a regular or ordinary banking procedure. It is too well known that, in the usual course of business, bank cashiers do not thus undertake the collection of depositor's claims for them; that ordinarily banks do not pay out such demands in dimes, nickels, and pennies, and certainly do not make a practice of thus parting with their notes and checks. When these unusual circumstances are considered in connection with the direct allegation of the unlawful intent and purpose, there remains no room for doubt that the statutory crime is thereby charged.

(3) It is next contended that the transaction charged lacked the vital and necessary element of a transfer. The argument in this respect is somewhat duplex, and it seems unnecessary to take the space to answer it in detail. It is perhaps sufficient to say that whether respondent in doing the things charged acted on behalf of, and at the request of, the payee named in the certificate of deposit, or acted on his own motion and initiative, still the indictment charges that the assets named were by him removed from the possession of the bank to effectuate an unlawful purpose, and we deem that sufficient.

(4) The next contention is that the indictment was fatally defective in that it charged that the purpose was to give the payee "a preference as one of the creditors of said Grant County Bank," instead of using the language of the statute, "with a view to the

preference of one creditor over another." If the payee was given a preference as one of the creditors of the bank he thereby gained a preference over other creditors. In our judgment, the words used in the indictment mean exactly the same thing, no more and no less, than the words used in the statute.

(5) Finally, it is contended that the absence of an allegation in the indictment that the bank did in fact become insolvent is fatal, it being contended that a bank may continue in business notwithstanding its financial condition becomes precarious, in the hope that it may weather the storm. Possibly in some circumstances that may be true, depending upon what is meant by the term "precarious." If a bank be insolvent its officers may not, knowing that fact, receive deposits, and its open door thereafter is in effect a fraudulent representation. But however that may be, the crime defined by the statute which we are considering is a transfer of assets with a view to a preference in contemplation of insolvency, and it seems fairly reasonable to believe that the bank's officers and directors might contemplate insolvency with just cause and yet finally avert that end, and still a crime might be committed while the stage of contemplation was in progress, and it would still be a crime under the statute after the actual insolvency had been averted. At the most, proof that the bank did not in fact become insolvent would be but one element to be considered by a jury in determining the ultimate fact as to whether a particular transfer was made in contemplation of insolvency.

We conclude that the indictment is not defective, and the judgment is reversed with directions to overrule the demurrer.

MAIN, C. J., BRIDGES, MITCHELL, PEMBERTON, and PARKER, JJ., concur.

FULLERTON, J. (dissenting)—I cannot concur in the conclusion reached in the fourth and fifth paragraphs of the opinion.

HOLCOMB, J. (dissenting)—The reasoning and results as to all the propositions as set forth in the foregoing opinion receive our hearty concurrence, except the fifth. I cannot conceive of any "unlawful transfer" of assets of a bank "in contemplation of insolvency" except of a failing bank. There could be no unlawful preference unless the bank was or became insolvent.

I therefore dissent.

MACKINTOSH, J., concurs with HOLCOMB, J.